```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
|  | ) Action No. |
| v. | ) 5:14-cr-84-JMH |
|  | ) |
| NEAL SCOTT STONE and | ) **MEMORANDUM OPINION AND ORDER** |
| CATHERINE GABRIELLE LEAKE, | ) |
| Defendants. | ) |

*** *** ***

This matter is before the Court upon Defendants' motion to suppress evidence seized during of a search of Defendant Stone's apartment pursuant to a search warrant obtained by Detective Jason Varney of the Berea Police Department. This matter has been fully briefed and a hearing was conducted on October 21, 2014. For the following reasons, Defendants' motion to suppress will be denied.

I.

The affidavit used to obtain the search warrant for Stone's apartment provided the following information. During the course of a drug investigation, a cooperating individual ("CI") informed Detective Varney that the CI could purchase heroin from a Berea resident, Nicky Hampton. The CI reported that Hampton was supplied the heroin by a black male who was attending Eastern Kentucky University. Thereafter, the CI advised Berea

Police Detective Danny McGuire that the unknown black male supplier would be arriving at Nicky Hampton's residence. Subsequently, Detective McGuire drove to Nicky Hampton's residence, where he observed a black male with a backpack exit the residence and drive away in a Toyota Camry, which was registered to Neal Stone. Detective McGuire followed the Camry to the Eastern Kentucky University campus, where he lost the vehicle in traffic. Detective McGuire later learned that Neal Stone had an address of 818 Brockton, located on the Eastern Kentucky University campus.

Following these observations, using the CI, Berea police executed a controlled purchase of heroin from Nicky Hampton. A few days later, Berea police carried out another controlled purchase from Nicky Hampton. Hampton informed the CI that she would meet her supplier outside the presence of the CI in the Wal-Mart parking lot, but police followed Hampton and a white male, later identified as Josh Bogie, to another shopping area called Richmond Centre. In the meantime, Madison County Sheriff's Detective Jasper White followed the aforementioned black male—now believed to be Stone—from Stone's apartment at 818 Brockton to the Richmond Centre, where the car was lost in traffic. After a brief stop in Culver's, a fast-food restaurant at Richmond Centre, Hampton and Bogie returned to Wal-Mart and

picked up the CI. Police made contact with Hampton and Bogie a short time later. Bogie was found to possess a small amount of heroin, which Hampton claimed she purchased from Defendant Catherine Leake inside the Culver's bathroom. At that point, Hampton and Bogie agreed to cooperate by arranging a heroin deal with an individual they knew as "Mike."

Later that same day, Bogie made a consensually monitored phone call to "Mike," whom law enforcement believed to be Stone, to arrange the purchase of two grams of heroin. "Mike" agreed to the transaction and the two planned to meet at Wal-Mart. Detective White then observed Stone and Leake leave 818 Brockton in the Toyota Camry and drive to Richmond Plaza. Stone then instructed Bogie to meet at McDonald's and have Hampton come into the McDonald's bathroom, where Leake was waiting. At that point, detectives made contact with Leake inside McDonald's and with Stone as he was seated in his car outside the restaurant. No drugs were located upon a search of Stone and his vehicle. During the booking process, a small amount of heroin was located in Leake's clothing.

In the early morning of May 14, 2014, Detective Varney obtained a search warrant for 818 Brockton. Upon execution of the search warrant, law enforcement located and seized a black backpack which contained Stone's identification, $520 of police

3

buy money, scales, syringes, and approximately 79 grams of heroin. Defendants move to suppress this evidence, arguing that the search warrant failed to establish probable cause that evidence of criminal activity would be found during a search of 818 Brockton.

## II.

As an initial matter, the Court must determine whether Defendant Leake has standing to object to the search of Stone's apartment. To establish a violation of her Fourth Amendment rights, Leake must show that she had a subjective expectation of privacy in Stone's apartment and that the expectation of privacy was reasonable. *Minnesota v. Carter,* 525 U.S. 83, 88 (1998). It is generally established that an overnight guest has a legitimate expectation of privacy in his host's home. *See Minnesota v. Olson,* 495 U.S. 91, 98 (1990). During the hearing on this motion, Leake's father testified that Leake and Stone were "a couple," and that although Leake did not possess a key to Stone's apartment, she spent the night there two to three times per week around the time of the search. Leake's father also testified that on the night immediately preceding her arrest, Leake had spent night at Stone's apartment. Further, Detective Danny McGuire testified that, upon execution of the search warrant, he observed several items in the apartment that

4

presumably belonged to Leake, including a cloth bag, a makeup bag, a few items of clothing, and a hairdryer.

The Sixth Circuit has construed the Fourth Amendment as protecting nearly all overnight guests. *United States v. Washington,* 573 F.3d 279, 283 (6th Cir. 2009). Based on the evidence presented, the Court is satisfied that Leake was an overnight guest in Stone's apartment around the time of the search and, thus, she has standing to challenge the admission of the seized evidence.

### III.

Defendants argue that the items seized during the search of Stone's apartment should be suppressed because the search warrant was not supported by probable cause, as required by the Fourth Amendment to the United States Constitution. Probable cause for the issuance of a search warrant depends on whether the supporting affidavit sets out facts and circumstances which indicate "a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Brown,* 732 F.3d 569, 573 (6th Cir. 2013) (internal quotation omitted). An affidavit supporting a search warrant should be reviewed "in a commonsense, rather than a hypertechnical manner." *Id.* (citation omitted). This standard requires the Court to review

the affidavit as a whole, rather than subjecting it to line-by-line scrutiny. *Id.*

Here, the information contained in the affidavit was sufficient to establish a fair probability that evidence of a crime would be located at Stone's apartment. The CI involved had provided information on previous occasions and was known to be reliable. While the Defendants object to the lack of specificity regarding the CI's past reliability, it remains that law enforcement corroborated the CI's statements through its own investigations. *See United States v. Jackson,* 470 F.3d 299, 307 (6th Cir. 2006) (discussing how corroborating evidence from law enforcement may support probable cause finding, even when affidavit supplies little information about an informant's reliability). For example, an individual the police determined to be Stone was observed leaving Nicky Hampton's residence at the same time as a known heroin transaction, as predicted by the CI. Stone's identity was confirmed based on his automobile registration and police observations of the vehicle registered to him coming and going from 818 Brockton, which officers discovered was Stone's address. Further, as stated in the affidavit, Stone's movements, which were being monitored by law enforcement, corresponded with the controlled drug purchases conducted throughout the investigation. Specifically, after

arranging the controlled heroin purchases with the CI and Nicky Hampton, officers observed Stone drive away from his residence and to the locations where the transactions were to take place.

The Defendants contend that there was an insufficient nexus between Stone's apartment and any suspected illegal activity because the affidavit contained no evidence of anyone having been in Stone's apartment to directly observe evidence of a crime. The adequacy of an affidavit, however, is to be judged based on what it contains, not what it lacks, "or on what a critic might say should have been added." *United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000). The affidavit describes how officers observed Stone traveling to and from 818 Brockton in the context of multiple controlled heroin transactions. *See United States v. Gunter,* 266 F. App'x 415, 419 (6th Cir. 2008) (unpublished opinion) (approving warrant based on officer's observations and statement that "drug dealers typically keep evidence of their crime in their residence").

Based on the foregoing, the Court finds that the search warrant application contained sufficient information to find that there was probable cause to search Stone's apartment at 818 Brockton. Because the Court finds that probable cause existed, the government's argument regarding the good-faith exception to the exclusionary rule need not be addressed.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' motion to suppress, [DE 38], is **DENIED.**

This the 21st day of October, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge