UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. 5:14-cr-84-JMH |
| v. | ) | |
| NEAL SCOTT STONE and CATHERINE GABRIELLE LEAKE, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\* \* \* \* \*

This matter is before the Court upon Defendants' motion to suppress and for a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978). [DE 49,55].[1] The government has filed its response, [DE 53], and the Defendants have filed a reply, [DE 57]. Having considered the matter and being otherwise adequately advised, the Court will deny Defendants' motion to suppress the evidence seized as a result of the search of Stone's residence.

**I.**

As the basis for his motion to suppress, Stone argues that the search warrant used to search his residence was based upon "false statements and omissions of material fact that appear to have been made knowingly or recklessly." The search warrant

---

[1] On November 20, 2014, Defendant Leake moved to join in Defendant Stone's motion to suppress and motion for a *Franks* hearing, [DE 55]. The Court granted her motion the same day and, accordingly, all aspects of this Opinion and Order apply to Leake's motion, as well as Stone's.

provided the following, in part, as the basis for probable cause:

RECEIVED INFORMATION FROM:

On 05/09/2014, the affiant received information from a Cooperating Witness, who has provided information to the Madison County Sheriff's Department and Berea Police Department that has been corroborated through independent investigation and by other sources of information while working with the affiant. The Cooperating Witness, who will be identified as BPD-CI-13-003, told the affiant that he/she could purchase heroin from a white female named Nicky Hampton, who was later identified as Angela Nicole Hampton. The Cooperating Witness also stated that Nicky Hampton was supplied the heroin by a black male who was attending school at Eastern Kentucky University. The witness further stated that Nicky Hampton would sell him/her seven grams for $1,400.00 and Nicky Hampton would have to get the heroin from the unknown black male. The Cooperating Witness was instructed to speak with Nicky Hampton. The Cooperating Witness advised Detective McGuire that he/she believe the unknown black male supplier would be arriving at Nicky Hampton's residence, located at 161 Wilson Lane, in Berea, KY.

OBSERVED:

On 05/09/2014, Detective McGuire drove to the area of 161 Wilson Lane, in Berea, KY in an attempt to observe and or possibly identify the black male. Detective McGuire observed a black male exit the residence carrying a backpack. The black male left the residence in a red 2008 Toyota Camry, with Kentucky registration 518-PPG. The vehicle is registered to Neal Stone, 104 Treetop Drive, Bardstown, KY 40004. Detective McGuire followed the vehicle to the Eastern Kentucky University Campus where the vehicle was lost in traffic. Detective McGuire later discovered that the vehicles registered owner, Neal Stone, had an address of 818 Brockton, on the Eastern Kentucky University Campus.

After receiving the information on 05/09/2014, Detective McGuire and the affiant met with BDP-CI-13-003 who was searched and issued buy money for the purchase of heroin from Nicky Hampton. Detective McGuire drove the Cooperating Witness to meet with Nicky Hampton to purchase a quantity of heroin. Detective McGuire and the affiant met with the Cooperating Witness directly after the Cooperating Witness met with Hampton location where the affiant met and briefed the Cooperating Witness. The Cooperating Witness turned over approximately one gram of heroin to Detective McGuire and stated that the heroin was purchased from Nicky Hampton.

On 05/13/2014, the Cooperating Witness contacted Detective McGuire and stated that Nicky Hampton was ready to sell more heroin. Madison County Sheriff's Detective Jasper White drove to 818 Brockton in an attempt to see Neal Stone and/or his vehicle leave the residence to make the transaction. Detective McGuire and the affiant met with BPD-CI-13-003 who was searched and issued buy money for the purchase of heroin from Nicky Hampton. The affiant drove the Cooperating Witness to meet with Nicky Hampton to purchase a quantity of heroin. Detective McGuire, along with Madison County Sheriff's Detective Jason Parker followed Nicky Hampton and a white male, later identified as Josh Bogie, who was driving the vehicle, from the area of Merrick Shell to Walmart parking lot. Nicky Hampton told the Cooperating Witness she was supposed to meet her supplier (Stone) in the Walmart parking lot. The Cooperating Witness was dropped off in the Walmart parking lot because Nicky Hampton was not allowed to bring him/her to the meeting with Neal Stone. Hampton and Bogie were followed to Richmond Centre.

Detective Jasper White followed Stone from 818 Brockton to Richmond Centre where he lost the vehicle in traffic. Detectives McGuire and Parker observed Bogie and Hampton drive to Culvers Restaurant. Hampton was observed going inside the business. Hampton exited the business a short time later and got back into the vehicle with Bogie. Bogie and Hampton were followed to Walmart where they picked up the

3

Cooperating Witness. Bogie and Hampton drove the Cooperating Witness to Kohls parking lot and let him/her out of the car.

Berea Police and Madison County Sheriffs Deputies made contact with Bogie and Hampton in Kohls parking lot. Bogie was found to be in possession of a small quantity of heroin, which he had concealed in a cigarette pack, in his right front pocket. Bogie gave Detective Parker consent to remove the pack from his pocket and to examine its contents, which is how the heroin was located. Hampton was not found to be in possession of any narcotics. Hampton told Detective McGuire that she purchased the heroin that Bogie had in his possession from Neal Stones girlfriend (Catherine Leake) inside the Culvers bathroom. Hampton and Bogie agreed to cooperate by helping arrange a heroin deal with Neal Stone, who they knew only as "Mike."

On 05/13/2014, Bogie was instructed to make a consensually monitored and recorded call to Neal Stone at (507) 210-0197 to arrange the purchase of two grams of heroin. Stone agreed to do so and told Bogie to meet him at Walmart. Detective McGuire rode with Bogie and Hampton to the area of Walmart. Detective White observed Stone and a white female, later identified as Catherine Leake, exit 818 Brockton and leave the area in the red Toyota Camry. Detective White followed the vehicle to the Eastern Bypass and observed the vehicle turn right into Richmond Plaza. Stone told Bogie to meet at McDonalds and to have Hampton come into the McDonalds bathroom. Detective McGuire told Hampton to go into the bathroom and to let him know if the white female (Leake) was in the bathroom. Detective McGuire advised Detective Parker that the female was in the bathroom and to make contact with Stone who was seated in his vehicle in Tractor Supply parking lot.

Detectives McGuire and White made contact with Leake inside McDonalds. Detective Parker, Madison County Sheriff's Deputy Gibbs and Berea Police Officer Jeff Parker made contact with Neal Stone. Stone was removed from his vehicle which was presented to the Berea Police K9 for a free air sniff. Parko alerted

4

to the driver's side door of the vehicle. A search was conducted and no drugs were located.

Leake was searched by Madison County Sheriff's Deputy Michelle Albertson. No drugs were located on her person. Leake was placed under arrest and was later booked in at the Madison County Detention Center. During the booking process, Madison County Detention Center Deputy Cory Dunning observed Leake holding a rock of suspected heroin in her right hand and according to Dunning, Leake was attempting to conceal the rock in the front her pants. The rock was immediately seized by Detective McGuire and was field tested. The substance field tested positive for heroin.

From training and experience, the affiant knows that persons involved in illegal drug trafficking have large amounts of currency from the sale of drugs. The affiant knows that this currency is kept in homes, vehicles and sometimes on the person of people involved in the illegal trafficking of drugs.

Affiant has reasonable and probable cause to believe that grounds exist for the issuance of a Search Warrant, based on the aforementioned facts, information and circumstances and prays that a Search Warrant be issued, that the property be seized, or any part thereof, and brought before any court and/or retained subject to the order of said Court.

**II.**

To be entitled to a *Franks* hearing based on an affirmative misstatement, a defendant must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause."

5

*United States v. Neal,* 577 F. App'x 434, 450 (6th Cir. 2014) (quoting *Franks,* 438 U.S. at 155-56).

First, Defendants take issue with the portion of the affidavit which states that Angela Hampton told police that she had acquired heroin from "Neal Stone's girlfriend (Catherine Leake)." The implication of this statement, Defendants contend, is that, when asked to identify the source of the heroin, Hampton said, "Neal Stone's girlfriend," which could not have been true because the affidavit itself states that Hampton did not know anyone named Neal Stone. There is no indication, however, that the affiant, Detective Jason Varney, purports to quote Hampton when stating "Neal Stone's girlfriend." Further, Varney states immediately thereafter that Hampton and Bogie know Stone only as "Mike." Based on these statements, it is clear that Varney has not made a knowing or intentional affirmative misstatement regarding Neal Stone's identity in this portion of the affidavit.

Defendants also allege that the portion of the affidavit describing a phone call made "to Neal Stone at (507) 210-1097" is materially misleading because the recording of the call reveals that the person who answered the phone is never referred to as Neal Stone or Mike, but rather, as "Big G." While they knew him as "Mike," Hampton and Bogie were familiar with Stone

and the monitored call contained conversation law enforcement construed to relate to drug dealing activity. The affidavit goes on to state that, following the phone call, another detective observed Stone and Leake exit Stone's apartment and arrive at the location discussed in the phone call. Based on the foregoing, Detective Varney was reasonable in relying upon the information provided by Bogie and Hampton. Defendants have failed to show that, with respect to the monitored phone call, Varney provided any false statement knowingly and intentionally, or with reckless disregard for the truth.

Finally, Defendants contend that, in the affidavit, Detective Varney mischaracterized the amount of heroin Leake had in her possession at the Madison County Detention Center. By describing the heroin as a rock and failing to state its weight, Defendants claim, Varney created the notion that Leake and Stone were involved in substantial drug sales. While a material omission from an affidavit may provide the basis for obtaining a *Franks* hearing, there is a higher bar for obtaining a hearing as opposed to an allegedly false affirmative misstatement. *United States v. Fowler,* 535 F.3d 408, 415 (6th Cir. 2008). "[E]xcept in the very rare cases where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and

the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton,* 134 F.3d 809, 816 (6th Cir. 1998). Here, Defendants have made no showing that Detective Varney intended to exclude the information or that the weight of the heroin found in Leake's clothing was critical. Had the .11 gram weight been included in the affidavit, a finding of probable cause still would have been appropriate.

Accordingly, **IT IS ORDERED:**

(1) that the evidentiary hearing in this matter, currently scheduled for November 25, 2014, is **SET ASIDE;**

(2) that this matter shall come on for a **SCHEDULING CONFERENCE** on November 25, 2014, at 10:00 a.m.; and

**(**3) that the Defendants' motion to suppress, [DE 49], is **DENIED.**

This the 21st day of November, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge